IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Flores, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| *-vs-* | ) | No. 10-cv-8040 |
| | ) | |
| Sheriff of Cook County and Cook County, Illinois, | ) | *(Judge Pallmeyer)* |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. Introduction

The starting point for this case is the decision of the Seventh Circuit in *May v. Sheahan*, 226 F.2d 826 (7th Cir. 2000), which involved the predecessor of the shackling rule at issue in this lawsuit.

The rule applied in *May* "requires hospital detainees to be shackled, by hand and foot, to their beds despite the 24 hour presence of an armed guard." 226 F.3d at 878. The Sheriff applied the identical rule to plaintiff: the rule in effect in 2009, when plaintiff was a detainee at Stroger Hospital, provides as follows (Defendants Exhibit D at 2):

A. Restraints

1. Handcuffs will be applied to one wrist preferably to the wrist that has no medication administered to, Handcuff will be double looked including cuff not being used, Blue box and chain will be applied to handcuff. Chain will be wrapped

around bed frame (not to be attached to hand rails of bed or to part of bed that can be broken off) and padlocked secured. A reasonable amount of chain slack, which does not present a danger to the Officer, will be allowed for arm movement.

2. Leg Shackles; one Leg shackle will be applied to the opposite ankle (key hole toward foot) to the wrist that is restrained. Other leg shackle is to be attached to a sturdy part of bed leg shackles are also to be double locked.

3. Restraining is to be done in a manner that will not unduly interfere with medical procedures and/or tests.

4. Handcuffs, shackles blue box, chain and padlock will be standard policy for all detainees at hospitals. Other restraining devises may be used. Supervisor will be contacted if other restraining measure must be used e.g. leather restraints. Supervisor will inform Chief or Superintendent of External Operations of change both written and verbally.

\*\*\*

7. If detainee is to be ambulated, transported or tested, supervisor will assign two officers to perform task. Detainee is still to be restrained ether with handcuffs or leg shackles or other approved restraining devise.

\*\*\*

8. Officers and Supervisors will inform hospital personnel of this security measure so they are aware that detainee will not move out of bed without two officers present Hospital personnel will also be informed that they must provide us with a schedule of medical events with at least 24-hour notice in order not to delay detainee treatment(s).

\*\*\*

11. Detainees are to be given a bedpan by medical personnel to relieve themselves. Detainees are not permitted to leave bed unless authorized to do so.

The Seventh Circuit held in *May* that the Sheriff's shackling policy "constitutes punishment in the constitutional sense if [the use of restraints] … is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve."[1] *May*, 226 F.3d at 884. The Court of Appeals did not reach the merits of this claim in *May*, holding that "[p]erhaps after some discovery [the Sheriff] can produce evidence justifying both his shackling policy in general and his shackling of May in particular, but May's allegations are more than adequate to survive a motion to dismiss."[2] *Id.*

Plaintiff was subjected to the Sheriff's shackling policy when he was treated at Stroger Hospital in January of 2009. Plaintiff contends that the shackling policy amounted to punishment under *May*. Plaintiff also contends that, as applied to him, the shackling policy amount to deliberate indifference to a serious medical need. Defendants have moved for

---

[1] The Seventh Circuit noted that the challenge to the shackling policy "suggests a claim that [the policy] … amounted to deliberate indifference to a serious medical need." 226 F.3d at 884 n5. The Court of Appeals did not rule on this theory because it had not been raised on appeal.

[2] The case was settled on remand *sub nom. Rahim v. Sheahan*, No. 99-cv-9305, N.D.Ill.

summary judgment. The Court should deny this motion for the reasons set out below.

## II.  Facts

Plaintiff entered the Cook County Jail on January 5, 2009, after he voluntarily surrendered on an outstanding warrant. (Plaintiffs' Additional Facts, par. 3.) The Jail classified plaintiff as a "medium security" prisoner. (Plaintiff's Additional Facts, par. 4.)

Plaintiff became ill (Plaintiff's Additional Facts, par. 5), and was evacuated to Stroger Hospital on January 13, 2009. (Defendants' Rule 56 Statement, par. 15.) Plaintiffs' legs were "huge" because he was retaining fluids; he "could hardly even walk." (Plaintiff's Additional Facts, par. 7.)

Plaintiff remained at Stroger Hospital until January 17, 2009 and was shackled and handcuffed to his hospital during this entire period. (Plaintiff's Additional Facts, par. 8.) The restraints were not removed during meals. (Plaintiff's Additional Facts, par. 9.) Nor were the restraints removed when plaintiff performed excretory functions: plaintiff was given a small bottle with a funnel in which to urinate and a bed pan in which to defecate. (Defendants' Rule 56 Statement, par. 26.)

On January 15, 2009, a physician at Stroger Hospital ordered "DVT with ambulating." (Plaintiff's Additional Facts, par. 10.) Plaintiff was

aware of this medical advice and tried to walk, but the correctional officers (who understand "ambulating" to mean, "Walking around" Plaintiff's Additional Fact, par. 11), would not let plaintiff follow his doctor's order. (Plaintiff's Additional Facts, par. 12.) A physician noted that plaintiff was unable to ambulate because he had been "chained to the bed for days and has not been able to ambulate." (Plaintiff's Additional Facts, par. 13.)

Plaintiff was in distress while at Stroger "due to cough as well as being handcuffed to bed." (Plaintiff's Additional Facts, par. 14.) The leg shackles resulted in gratuitous pain. (Plaintiff's Additional Facts, par. 15.)

### III.    The Motion for Summary Judgment

Defendant asserts that the shackling policy applied to plaintiff was rationally related to a legitimate penological purpose. (Def.Mem. 5-7.) Defendants state that "the Record is complete, and the Sheriff has produced ample evidence demonstrating that the Policy is not unnecessarily excessive and did not inflict gratuitous pain and suffering on Plaintiff, as well as evidence showing that Plaintiff himself posed a legitimate, individual security risk." (Def.Mem. 8-9.) The Court should reject defendants' claim of "ample evidence" for the reasons plaintiff sets out in Part IV below.

Defendants do not address the legal theory that the shackling policy resulted in deliberate indifference to a serious medical need. Nor do defendants address the legal theory that requiring plaintiff to use a bedpan to defecate when, but for the shackles, he could ambulate to the washroom, deprived plaintiff of his constitutional right to dignity.[3] Plaintiff shows in Parts V and VI below that he has presented enough evidence in support of both theories to warrant a trial.

## IV. Defendants Have Failed to Come Forward with Sufficient Evidence to Justify the Shackling Policy or Its Application to Plaintiff

Defendants have not presented any evidence to justify the shackling policy. Unlike their attempt to defend application of the shackling policy to pregnant detainees in *Zaborowski v. Dart*, No. 08-cv-6946, defendants have not included in their Rule 56 statement any contentions about whether and under what circumstances any of these detainees have attempted to escape.

The district judge in *Zaborowski* concluded that "the Sheriff's Office has presented sufficient evidence raising a genuine issue of fact that the

---

[3] These legal theories are not identified in the complaint, in accord with the rule that "there is no duty to plead legal theories. [citations omitted] It therefore does not matter whether the complaint mentioned the Fourth Amendment, the Fourteenth Amendment, or neither, so long as it provided adequate notice of the plaintiff's claim to the defendants." *Currie v. Chhabara*, ___ F.3d ___, ___ (No. 12-2709, 7th Cir., August 20, 2013, slip op. 5.)

shackling policy was not arbitrary, purposeless, or gratuitous, but was related to a nonpunitive, administrative purpose." *Zaborowski v. Dart*, No. No. 08-cv-6946, Mem.Op., Dec. 20, 2011, 15 (attached as Exhibit 1). None of the evidence in the summary judgment record in *Zaborowski*, however, is before the Court in this case. The district court denied summary judgment in *Zaborowski* after considering all of defendants' evidence and that case eventually settled; this Court should decline to grant summary judgment to defendants without any of the evidence deemed insufficient in *Zaborowski.*

Defendants argue that "Plaintiff was an obvious security risk" because he had failed to appear in court in 1999. (Def.Mem. 10.) This argument ignores plaintiff's physical condition in January of 2009, when he "could hardly even walk." (Plaintiff's Additional Facts, par. 8.) This "security risk" argument also ignores the fact that plaintiff had been classified as "medium security" when he entered the Jail in January of 2009, after he had voluntarily surrendered on the outstanding warrant. (Plaintiff's Additional Facts, pars. 3-4.) Finally, the "obvious security risk" argument disregards the fact that the officers guarding plaintiff at Stroger Hospital did not know anything about plaintiff beyond the facts set out in

Plaintiff's Exhibit 3, which do not include any claim that plaintiff is a "security risk." (Plaintiff's Additional Facts, par. 6.)

Defendants attempt to support application of the shackling policy to plaintiff with nothing more than the language of the shackling rule. The Court of Appeals demanded more evidence in *May* and this Court should do likewise. Accordingly, the Court should deny defendants' motion for summary judgment

## V.    Deliberate Indifference to a Serious Medical Need

A pre-trial detainee, like plaintiff, is "protected from cruel and unusual punishment through the Fourteenth Amendment." *King v. Kramer*, 680 F.3d 1013, 1017 (7th Cir. 2012),  citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) and *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). To establish such a claim, a detainee "must first present evidence supporting the conclusion that he had an "objectively serious medical need." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)." *King*, 680 F.3d at 1017.

"An "objectively serious medical need" is 'one that has been diagnosed by a physician as mandating treatment.' [citing] *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)." *King*, 680 F.3d at 1018.

Jail officials may not "substitute their judgments for a medical professional's prescription." *Zentmyer*, 220 F.3d at 812.

Plaintiff had an "objectively serious medical need" when he was at Stroger hospital in January of 2009; part of the treatment ordered by a physician was that plaintiff be permitted to ambulate. (Plaintiff's Additional Facts, par. 10.) The shackling policy barred plaintiff from following his physician's directive, however.

In 2006, the Sheriff's shackling policy contained an express exception to the mandatory shackling of hospitalized detainees "when a written order from a licensed physician prohibits restraining for a valid medical reason" (Plaintiff's Additional Facts, par. 1) The Sheriff removed this exception in the 2009 shackling policy applied to plaintiff. (Plaintiff's Additional Facts, par. 2.) Application of this policy prevented plaintiff from ambulating. (Plaintiff's Additional Facts, par. 13.)

The shackling policy applied to plaintiff "substituted [the Sheriff's judgment for that of a physician, and thereby deprived plaintiff of rights secured by the Fourteenth Amendment. *Zentmyer*, 220 F.3d at 812.

## VI.    Shackling Denied Plaintiff of His Constitutional Right to Dignity

"The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State."

*Schmerber v. California*, 384 U.S. 757, 767 (1966). This principle applies to plaintiff, because "[p]risoners retain the essence of human dignity inherent in all persons." *Brown v. Plata*, 131 S.Ct. 1910, 1928 (2011).

Requiring a detainee, who is capable of walking to a toilet, to use a bed pan to defecate strikes at the core of human dignity. The same is true for insisting that a detainee remain shackled in bed and prevented from walking, after a physician has told the detainee that walking is important to treat his deep vein thrombosis ("DVT").

Defendants assert that this claim is without merit because "Plaintiff did not complain about his shackles to his nurses." (Def.Mem. 10.) Plaintiff's physicians, however, knew that plaintiff was in distress "due to cough as well as being handcuffed to bed." (Plaintiff's Additional Fact, par. 14.)

Defendants' also argue that plaintiff did not suffer serious injury from the shackling of his swollen ankles. (Def.Mem. 10.) The shackling caused gratuitous pain (Plaintiff's Additional Facts, par. 15), and thereby caused a denial of Fourteenth Amendment rights. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

### VII. Injury Caused by an Express Policy Does Not Require Proof of Widespread Application

Defendants argue that plaintiff's claims fail because he has not presented evidence of a widespread application of defendants' shackling policy. (Def.Mem. 11.) This argument is without merit.

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) the Court held that a municipality may be sued under 42 U.S.C. § 1983 when a constitutional tort was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. The Court reaffirmed in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) that a municipality is subject to suit under Section 1983 for "acts which the municipality has officially sanctioned or ordered." *Id.* at 480. There can be no question that a municipality (or a Sheriff in his (or her) official capacity) can be used under Section 1983 for constitutional torts caused by "an express municipal policy." *See, e.g., McTigue v. City of Chicago*, 60 F.3d 381 283 (7th Cir. 1995); *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 675 (7th Cir. 2012).

This case involves an express policy: the Sheriff's 2009 shackling policy. (Defendants' Exhibit D.) The Court should therefore reject

defendants' argument about the need to show widespread application of this explicit policy

## VIII.    Conclusion

The Court should deny defendants' motion for summary judgment.

Respectfully submitted,

/s/    <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC 830399
200 South Michigan Avenue
Suite 1240
Chicago, Illinois 60604
(312) 427-3200

*an attorney for plaintiff*

**Exhibit 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CATHERINE ZABOROWSKI and | ) | |
| SIMONE JACKSON, individually and | ) | |
| on behalf of a class, NICOLE BLAIR, LISA | ) | |
| BROWN, DANIELLE BRYANT, ISABEL | ) | |
| CARMONA, MARIANNE CRUZ, CORA | ) | |
| FLETCHER, DENAE JOHNSON, | ) | |
| DEBORAH LEE, FELICIA LIGON, | ) | |
| ANGELA OSS, SHEENA RICHARDSON, | ) | |
| BENNETTA SIDNEY, MONIQUE | ) | Case No. 08 C 6946 |
| STARNES, and LATANIA WALTON, | ) | |
| individually, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| THOMAS J. DART, SHERIFF OF COOK | ) | |
| COUNTY and COOK COUNTY, | ) | |
| ILLINOIS, | ) | |
|  | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In their Second Amended Class Action Complaint, Plaintiffs Catherine Zaborowski and Simone Jackson, individually, and on behalf of a class ("Class Plaintiffs"), allege violations of their Fourteenth Amendment substantive due process rights and state law against Thomas J. Dart, the Sheriff of Cook County, in his official capacity, in relation to the alleged policy of shackling pregnant detainees[1] during labor, delivery, and/or recovery following delivery. The Individual Plaintiffs allege an individual capacity claim against Sheriff Dart based on his delay

---

[1] The parties use the terms "detainee" and "inmate" interchangeably, although it is undisputed that Plaintiffs were pretrial detainees and not convicted prisoners. (*See* R. 257, 8/11/11, Reply Brief, at 2 n.1.)

in instituting any remedial action after he learned about the shackling policy.

Before the Court are the parties' cross-motions for summary judgment on the Class Plaintiffs' official capacity and state law claims pursuant to Federal Rule of Civil Procedure 56. Also before the Court is Sheriff Dart's motion for summary judgment as to the Individual Plaintiffs' individual capacity claim, also brought pursuant to Rule 56. Because there are genuine disputes as to the material facts underlying the Class Plaintiffs' substantive due process and state law claims, the Court denies the parties' cross-motions for summary judgment. The Court, however, grants Sheriff Dart's motion for summary judgment in regard to the individual capacity claim and dismisses Sheriff Dart in his individual capacity from this lawsuit.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of

2

any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). The Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. "District courts have broad discretion to enforce and require strict compliance with their local rules." *Benuzzi v. Board of Educ. of City of Chicago,* 647 F.3d 652, 655 (7th Cir. 2011).

Many of the parties' Local Rule 56.1 statements and responses are argumentative, evasive, and do not properly cite to the record. When culling the relevant facts of this case, the Court considered each statement and response individually to determine whether they were proper under the local rules.

## II. Relevant Facts

This case is partially proceeding as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) for: "All women in the custody of defendant Sheriff on and after December

4, 2006, who have been or who will be shackled during labor, delivery, or recovery following delivery." (R. 217, Pls.' Rule 56.1 Stmt. Facts ¶ 1.) The Individual Plaintiffs, who are bringing an individual capacity claim against Sheriff Thomas J. Dart, include Nicole Blair, Lisa Brown, Danielle Bryant, Isabel Carmona, Marianne Cruz, Cora Fletcher, Denae Johnson, Deborah Lee, Felicia Ligon, Angela Oss, Sheena Richardson, Bennetta Sidney, Monique Starnes, and Latania Walton. (R. 221, Defs.' Rule 56.1 Stmt. Facts ¶ 3.) Defendants are the Sheriff of Cook County and Cook County, Illinois.[2] (Pls.' Stmt. Facts ¶ 2.)

In 1999, the Sheriff's Office created the Department of Women's Justice Services ("DWJS") that specifically focuses on women offenders. (R. 214, Dart Rule 56.1 Stmt. Facts ¶ 34.) The DWJS's mission is to create integrated programs and services that break the inter-generational cycle of trauma, addiction, and crime for women and their children. (*Id.*) These goals are achieved through various programs, including the Maternal Objective Management ("MOMs") program. (*Id.*) The MOMs program is a residential program that is currently located outside of the Cook County Jail ("CCJ") Complex at the Haymarket Center and provides pregnant and postpartum detainees treatment for mental health, physical health, and substance abuse, as well as other supportive services. (Pls.' Stmt. Facts ¶ 5; Dart Stmt. Facts ¶ 55; Defs.' Stmt. Facts ¶ 24.)

From December 2006 until October 14, 2008, if a pregnant detainee assigned to the

---

[2] Although Cook County cannot be held vicariously liable for Sheriff Dart's alleged misconduct in relation to the Individual Plaintiffs' individual capacity claim, because Illinois counties have the duty to indemnify judgments against county sheriffs in their official capacity, Cook County is a necessary party to this lawsuit. *See Askew v. Sheriff of Cook County,* 568 F.3d 632, 636-37 (7th Cir. 2009); *Carver v. Sheriff of LaSalle County,* 324 F.3d 947, 948 (7th Cir. 2003); *see also Moy v. County of Cook,* 159 Ill.2d 519, 528-32, 203 Ill.Dec. 776, 640 N.E.2d 926 (Ill. 1994).

4

MOMs program was in labor, a Haymarket staff member would transport her to an outlying hospital, which in most cases was the John H. Stroger, Jr. Hospital of Cook County. (Defs.' Stmt. Facts ¶ 16; Dart Stmt. Facts ¶ 58.) Also during this time period, correctional officers did not restrain detainees in the MOMs program while they were at the MOMs facility or in transport to or from a medical facility. (Dart Stmt. Facts ¶ 59; R. 242, Pls.' Stmt. Add'l Facts ¶ 1.) Up until October 14, 2008, once a MOMs participant was admitted to a hospital, she was turned over to External Operations staff to be guarded in accordance with the External Operations policy in effect. (Defs.' Stmt. Facts ¶ 29; Dart Stmt. Facts ¶ 60.) Effective October 14, 2008, correctional officers did not restrain detainees in the MOMs program in any way during the course of their pregnancy, including transportation to the hospital, labor, delivery, or post-delivery recovery. (Dart Stmt. Facts ¶ 64; Pls.' Stmt. Add'l Facts ¶ 3.)

Pregnant detainees at the CCJ Complex who were eligible for placement in the MOMs program often remained at the CCJ Complex if the MOMs program was full. (Pl.'s Stmt. Facts ¶ 6.) There is evidence in the record that until April 2010, correctional officers shackled pregnant detainees housed at the CCJ Complex while transporting them to the hospital and at the hospital while they were in labor. (*Id*. ¶¶ 11, 23(b).) A correctional officer would accompany a pregnant detainee housed at the CCJ Complex in the ambulance on the way to the hospital and one or two other correctional officers would follow in a squad car. (*Id*. ¶ 12.)

The Sheriff of Cook County's Policy Number EO-32, External Operations, Hospital Policy and Procedure, effective July 25, 2006, concerning the procedures for transporting detainees housed outside of the CCJ Complex, states:

> (a) "In accordance with Illinois Statute 730 ILCS 125/17.5 (Pregnant Female Prisoners) *NO handcuffs, leg irons or waist chains shall be used on a female*

5

*inmate (detainee) who is in labor, this includes while being transported to a medical facility.*"

(b) "A female External Operations Officer is to be assigned to the pregnant inmate (detainee) whenever possible."

(c) "The External Operations Officer is to remain no further than outside the delivery room door once the pregnant inmate (detainee) enters the room."

(d) "The External Operations Officer will follow all hospital policies that do not conflict with maintaining the security of and preventing the escape of the inmate (detainee)."

(Defs.' Stmt. Facts ¶ 51.) (emphasis added). The 2008 General Order is substantially the same as the 2006 General Order regarding pregnant detainees in labor. (*Id.* ¶ 53.) Neither the 2006 or 2008 General Orders define "labor," although the 2010 General Order defines "pregnant subject in labor" as "any individual in the custody of the Cook County Sheriff's Office who claims to be in labor or giving birth, appears to be in labor, or who is verified by medical personnel to be in labor." (*Id.* ¶¶ 51, 53, 60.) The relevant 2010 General Order also barred the use of leg shackles on pregnant detainees regardless of the stage of their pregnancy, including up to two weeks after delivery. (*Id.* ¶ 59.) In February 2011, the Sheriff's Office also adopted a General Order prohibiting the shackling of "postpartum subjects." (Pls.' Stmt. Facts ¶ 27.)

At all times relevant to this lawsuit, and pursuant to Chapter 730, Corrections, specifically 730 ILCS 125/17.5,[3] the law in Illinois regarding the use of restraints on pregnant detainees stated:

Notwithstanding any other statute, directive, or administrative regulation, *when a pregnant female prisoner is brought to a hospital from a county jail for the purpose of delivering her baby, no handcuffs, shackles, or restraints of any kind*

---

[3] Chapter 55, Counties, of the Illinois Compiled Statutes Annotated, states this same language. *See* 55 ILCS 5/3-15003.6.

6

> *may be used during her transport to a medical facility for the purpose of delivering her baby.  Under no circumstances may leg irons or shackles or waist shackles be used on any pregnant female prisoner who is in labor.*  Upon the pregnant female prisoner's entry to the hospital delivery room, a county correctional officer must be posted immediately outside the delivery room.  The Sheriff must provide for adequate personnel to monitor the pregnant female prisoner during her transport to and from the hospital and during her stay at the hospital.

(Defs.' Stmt. Facts ¶ 55; Dart Stmt. Facts ¶ 41.) (emphasis added).

Despite the 2006 and 2008 General Orders and the Illinois statute, there is evidence in the record that correctional officers shackled pregnant detainees Plaintiff Simone Jackson, who was a MOMs participant, and Plaintiff Sheena Richardson, who was housed at the CCJ Complex, at some point during labor, delivery, and/or recovery following delivery in May 2008 and September 2008, respectively.  (Pls.' Stmt. Facts ¶¶ 14(c), 15, 17(a), (b), (c), 18, 20, 25(a), (b), 26, 28(b).)  Also, the Superintendent of External Operations testified that until October 2008, correctional officers shackled all detainees – whether they were from the MOMs program or the CCJ Complex – at the hospital until the doctor informed the guards that the detainee was in "active labor."  (*Id.* ¶ 22; Ex. 10, Holmes Dep., at 96-97.)  Further, the Executive Director of the Women's Justice Services testified that in 2006 correctional officers used leg irons to secure pregnant detainees to the bed frame while they were in the hospital to deliver their children.  (*Id.* ¶ 15; Ex. 9, McDermott Dep., at 19-20.)  The Superintendent of Administration also testified that after 2008, correctional officers continued to shackle pregnant detainees who came from the CCJ Complex while they were in the hospital to deliver their children.  (*Id.* ¶ 23(b); Ex. 12, Hickerson Dep, at 43.)  Meanwhile, if there was no emergency or life threatening situation, the correctional officer monitoring the detainee at the hospital was required to obtain a supervisor's approval before removing any such restraints.  (*Id.* ¶¶ 19, 26.)

7

Both the 2006 and 2008 General Orders designated all detainees "who are transported, housed or otherwise located outside of the CCDOC [Cook County Department of Corrections] complex" as "high risk." (Defs.' Stmt. Facts ¶ 49; Dart Stmt. Facts ¶ 51.) Detainees who are transported or housed at outside medical facilities are considered "high risk" because they are no longer within the secured confines of the Cook County Jail, a lone correctional officer often guards the detainees, they have exposure to the public and medical personnel, and they have easier access to potential weapons. (Dart Stmt. Facts ¶ 51.) Moreover, numerous detainees have attempted to escape while being transported to or from a hospital or while at a hospital, including pregnant or postpartum detainees from the CCJ Complex and MOMs program. (*Id.* ¶ 52; Defs.' Stmt. Facts ¶¶ 78-99.) Defendants, however, admit that women in the MOMs program are not likely to be a flight risk and that detainees assigned to the MOMs program wear electronic monitoring devices. (Pls.' Stmt. Facts ¶¶ 5(d), 7.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

8

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

### I.      Substantive Due Process Claim

In their Second Amended Complaint, the Class Plaintiffs allege a substantive due process claim under the Fourteenth Amendment. More specifically, the Class Plaintiffs maintain that the Sheriff's shackling policy violates their due process right to their liberty interest in bodily integrity because the use of restraints under the circumstances constitutes punishment.[4] *See Hart v. Sheahan,* 396 F.3d 887, 891 (7th Cir. 2005); *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000); *see also Youngberg v. Romeo,* 457 U.S. 307, 316, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Before the Court addresses Defendants' argument that any such restraint policy was rationally related to the CCJ's legitimate penological interests in safety and security, the Court turns to the official shackling policy at issue.

Although the 2006 and 2008 General Orders for External Operations – Hospital Policy and Procedure – which applied to pregnant detainees housed outside of the CCJ Complex, stated that "NO handcuffs, leg irons or waist chains shall be used on a female inmate (detainee) who is

---

[4]  In their opening brief, the Class Plaintiffs contend that the Sheriff's policy amounts to a deliberate indifference to a serious medical need. *See Minix v. Canarecci,* 597 F.3d 824, 830-31 (7th Cir. 2010). Plaintiffs, however, fail to properly develop this argument. *See Clarett v. Roberts,* 657 F.3d 664, 674 (7th Cir. 2011) ("undeveloped arguments are considered waived"). Indeed, since the beginning of this lawsuit, Plaintiffs have repeatedly characterized the Sheriff's policy as violative of their liberty interest in bodily integrity. (*See, e.g.,* R. 23, 6/15/09 Motion for Class Cert.; R. 173, 2/17/11 Rule 37 Motion to Bar.) Therefore, the Court addresses the Class Plaintiffs' claim as a Fourteenth Amendment freedom from bodily restraint claim. *See May v. Sheahan,* 226 F.3d 876, 884 (7th Cir. 2000).

9

in labor," there is evidence in the record that correctional officers shackled pregnant detainees from the MOMs program at some point during labor, delivery, and/or recovery following delivery.  Also, despite the Illinois statute forbidding the shackling of pregnant detainees in labor who are detained at a county jail, there is also evidence in the record that correctional officers shackled pregnant detainees assigned to the CCJ Complex while they were being transported to the hospital and also during labor, delivery, and/or recovery following delivery.  Indeed, the Sheriff's Office admits that it shackled pregnant detainees when they were being transported to the hospital and were in pre-labor or post-delivery.  (*See* R. 223, Defs.' 6/15/11 Brief, at 8.)  The Sheriff's Office, however, maintains that correctional officers did not shackle pregnant detainees during "active labor," although the 2006 and 2008 General Orders and the Illinois statute do not distinguish between "labor" and "active labor."

Accordingly, although the Sheriff's official policy and Illinois statute forbid the use of handcuffs, leg irons, or waist chains on pregnant detainees who are in labor, the Class Plaintiffs maintain that the Sheriff's Office had a widespread, unwritten practice of shackling pregnant detainees in labor.[5]  As such, Plaintiffs' argument must be viewed under the framework set forth in *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because their official capacity claim against Sheriff Dart is a claim against the Sheriff's Office itself, and they are arguing that there is a widespread custom or practice of shackling pregnant detainees during labor, delivery, and/or recovery following delivery.  *See Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself"); *see also*

---

[5]  *See* R. 131, Second Amend. Compl. ¶ 11.

*Thomas v. Cook County Sheriff's Dept.,* 604 F.3d 293, 306 (7th Cir. 2010) ("*Monell* recognized that the premise behind a § 1983 action against a government body is 'the allegation that official policy is *responsible* for the deprivation of rights.'") (citation omitted) (emphasis in original). Three types of policies or customs are recognized in this context:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Klebanowski v. Sheahan,* 540 F.3d 633, 637 (7th Cir. 2008) (citation omitted); *see also Guzman v. Sheahan,* 495 F.3d 852, 859 (7th Cir. 2007).

Based on Plaintiffs' arguments, the Court turns to whether there is evidence in the record of "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Klebanowski,* 540 F.3d at 637. To demonstrate that the Sheriff's Office is liable for a harmful custom or practice, the Class Plaintiffs must establish that policymakers for the Sheriff's Office were deliberately indifferent as to the known or obvious consequences of the unwritten shackling policy. *See Thomas,* 604 F.3d at 303; *Montano v. City of Chicago,* 535 F.3d 558, 570 (7th Cir. 2008). "In other words, [the policymakers] must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas,* 604 F.3d at 303; *see also Montano,* 535 F.3d at 570.

Plaintiffs have presented sufficient evidence raising a genuine dispute as to the material fact that the Sheriff's Office had a widespread practice of shackling pregnant detainees during labor, delivery, and/or recovery following delivery and that policymakers were aware of the

11

custom or practice and did not take appropriate steps to protect the Class Plaintiffs. *See Phelan v. Cook County,* 463 F.3d 773, 789 (7th Cir. 2006) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work."); *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir. 1995) (the "usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers."). More specifically, not only is there direct evidence in the record that correctional officers shackled pregnant detainees Plaintiffs Simone Jackson and Sheena Richardson at some time during labor, delivery, and/or recovery following delivery, CCJ policymakers testified about the shackling policy. *See Waters v. City of Chicago,* 580 F.3d 575, 582 (7th Cir. 2009) (a policymaker sets or adopts rules of conduct not merely implements pre-existing rules). Specifically, the policymakers testified as follows: (1) the Superintendent of External Operations stated that until October 2008, correctional officers shackled pregnant detainees – whether they were from the MOMs program or the CCJ Complex – at the hospital until the doctor informed the guards that the detainee was in "active labor;" (2) the Executive Director of the Women's Justice Services testified that in 2006 correctional officers used leg irons to secure pregnant detainees to the bed frame while they were in the hospital to deliver their children; and (3) the Superintendent of Administration testified that after 2008, correctional officers continued to shackle pregnant women who came from the CCJ Complex while they were in the hospital to deliver their children. As such, there is a genuine dispute as to the material fact

12

that policymakers knew of the shackling policy and did not take steps to protect the Class Plaintiffs. On the other hand, construing the facts and all reasonable inferences in favor of the Sheriff's Office, the Class Plaintiffs have not presented sufficient evidence establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a).

The Court now turns to the Sheriff's argument that this restraint policy was rationally related to the CCJ's legitimate penological interest in safety and security. In general, conditions of confinement that are reasonably related to a legitimate and non-punitive governmental objective are not unconstitutional. *See Board v. Farnham,* 394 F.3d 469, 477 (7th Cir. 2005); *Murphy v. Walker,* 51 F.3d 714, 718 (7th Cir. 1995).[6] The Seventh Circuit explains that in "*Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court said that the proper question to guide determination of the constitutionality of restrictive conditions in pretrial detention was 'whether those conditions amount to punishment of the detainee.'" *Hart,* 396 F.3d at 891 (quoting *Wolfish,* 441 U.S. at 535). "The use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve."

---

[6] The Sheriff's Office argues that *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and its progeny are the controlling legal authority. *Turner* and its progeny, however, concern prison regulations most often in the context of convicted prisoners' First Amendment rights. *See, e.g., Van den Bosch v. Raemisch* 658 F.3d 778, 785 (7th Cir. 2011); *Vinning-El v. Evans,* 657 F.3d 591, 592-93 (7th Cir. 2011). As far as restrictive conditions of confinement as applied to pretrial detainees under the Fourteenth Amendment are concerned, the Seventh Circuit has relied upon *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), applying this standard in the context of shackling policies similar to the one at issue in this lawsuit. *See May v. Sheahan,* 226 F.3d 876, 884 (7th Cir. 2000); *Murphy v. Walker,* 51 F.3d 714, 717-18 (7th Cir. 1995). The Court therefore follows the Supreme Court's decision in *Wolfish* and the Seventh Circuit's decisions in *May* and *Murphy*.

13

*May*, 226 F.3d at 884. As the *Hart* decision clarifies, pretrial detainees, as well as convicted prisoners, have "an interest in being free from gratuitously severe restraints and hazards, while the detention facility has an interest in protecting the safety of detainees and guards and preventing escapes." *Id.* at 893.

Evidence in the record reveals that the External Operations Division has approximately 345 correctional officers who are responsible for the transfer of 3,000 to 4,000 detainees to medical facilities located outside of the CCJ Complex each year. (Defs.' Stmt. Facts ¶ 14.) These medical facilities include at least three county hospitals and numerous medical clinics. (*Id.* ¶ 15.) Also, the vast majority of the pregnant detainees from either the CCJ Complex or the MOMs program deliver their children at Stroger Hospital, which is a 1.2 million square foot medical facility at which 300,000 patients are treated annually. (*Id.* ¶¶ 16, 17.) There is also undisputed evidence in the record that detainees have attempted to escape while being transported to or from the hospital or while at the hospital, including pregnant detainees. The Sheriff's Office admits, however, that women in the MOMs program are not likely to be a flight risk and that detainees assigned to the MOMs program wear electronic monitoring devices, although the Sheriff's Office does not admit that pregnant detainees transported from the CCJ Complex are not a flight risk. Finally, there is evidence in the record that at least one correctional officer would accompany pregnant detainees housed at the CCJ Complex while in transit to the hospital and that correctional officers guard all detainees at the outside medical facilities.

Construing these facts and all reasonable inferences in the Class Plaintiffs' favor, there is sufficient evidence in the record raising a genuine dispute as to the material fact that the

14

shackling policy was rationally related to the non-punitive purpose of protecting the safety of

hospital staff and correctional officers, as well as preventing escapes – based on the amount of

detainees the Sheriff's Office guards in transit and at the outlying medical facilities, as well as

the previous escape attempts. *See Wolfish,* 441 U.S. at 546 ("maintaining institutional security

and preserving internal order and discipline" are central goals of prison administration). In

short, the Sheriff's Office has presented sufficient evidence raising a genuine issue of fact that

the shackling policy was not arbitrary, purposeless, or gratuitous, but was related to a non-

punitive, administrative purpose. *See Wolfish,* 441 U.S. at 539; *Hart,* 396 F.3d at 892; *Antonelli*

*v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). The Sheriff's Office, however, has not

presented sufficient evidence to establish that there is no genuine dispute as to any material facts

under the circumstances and that they are entitled to judgment as a matter of law – especially

because the parties hotly dispute the extent to which the shackling policy was enforced in the

first instance. *See* Fed.R.Civ.P. 56(a). Because genuine disputes of material facts exist in

relation to the Class Plaintiffs' substantive due process claim, the Court denies the parties' cross-

motions for summary judgment as to this claim.

## II.    State Law Negligence Claim

In the Second Amended Complaint, the Class Plaintiffs also allege that the shackling

policy is "in willful and wanton disregard of the laws of the State of Illinois." (R. 131, Second.

Am. Compl. ¶ 8.) The Class Plaintiffs' state law claim sounds in negligence based on the

Sheriff's alleged violation of the Illinois statute that forbids shackling pregnant prisoners in

labor. *See Calloway v. Kinkelaar,* 168 Ill.2d 312, 319-20, 213 Ill.Dec. 675, 659 N.E.2d 1322

(Ill. 1995). As the Supreme Court of Illinois has recognized, "tort liability may arise, on public

15

policy grounds, for tortious conduct that would defeat the aims and goals of a particular statutory scheme" if the statute "was designed to protect human life or property." *Id.* at 319; *see also Camp v. TNT Logistics Corp.,* 553 F.3d 502, 506 (7th Cir. 2009) ("a violation of a statute or ordinance designed to protect human life or property is prima facie evidence of negligence; the violation does not constitute negligence per se."). To clarify, if "the plaintiff is a member of the protected class and his or her injury is of the type that the statute was intended to protect against, the plaintiff may recover upon establishing that the defendant's violation of the ordinance or statute proximately caused plaintiff's injury." *Calloway,* 168 Ill.2d at 319. Accordingly, to "recover damages based upon a defendant's alleged statutory violation, a plaintiff must show that (1) she belongs to the class of persons that the statute was designed to protect; (2) her injury is of the type that the statute was designed to prevent; and (3) the violation proximately caused her injury." *First Springfield Bank & Trust v. Galman,* 188 Ill.2d 252, 256, 242 Ill.Dec. 113, 720 N.E.2d 1068 (Ill. 1999); *see also Camp,* 553 F.3d at 506.

Instead of addressing the Class Plaintiffs' state law negligence claim under this framework, the Sheriff's Office argues that Plaintiffs cannot establish a state-created liberty interest under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *See Thielman v. Leean,* 282 F.3d 478, 480 (7th Cir. 2002) ("Liberty interests can arise from two sources: the Federal Constitution or state law."). As discussed above, Plaintiffs' Fourteenth Amendment substantive due process claim is based on their liberty interest in bodily integrity, *see Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), while their state law claim is a negligence claim based on the Sheriff's alleged violation of the Illinois statute forbidding the shackling of pregnant prisoners during labor. *See Calloway,* 168

16

Ill.2d at 319-20.  Therefore, the Sheriff's arguments based on *Sandin* are misplaced.

The Sheriff's Office also contends that the Class Plaintiffs' state law negligence claim is barred by the one-year limitations period set forth in section 8-101(a) of the Illinois Local Government and Governmental Employees Tort Immunity Act.  *See* 745 ILCS 10/8-101(a).  The Sheriff's Office, however, failed to raise this affirmative defense in the Answer to the Second Amended Complaint and brings this argument for the first time in the present summary judgment motions.  The Sheriff's failure to plead this affirmative defense in the Answer – and the fact that the Sheriff's Office did not bring this defense until the summary judgment stage of these proceedings – amounts to waiver of the statute of limitations defense, especially because the Sheriff's Office offers no cogent justification for the delay.  *See Walker,* 526 F.3d at 979.  The Court thus turns to the Class Plaintiffs' negligence claim.

Here, the Class Plaintiffs have presented sufficient evidence creating a genuine dispute as to the material fact that they belong to the class of persons that the anti-shackling statute was designed to protect, namely, pregnant detainees in labor.  Indeed, as Representative William Black stated at the Illinois General Assembly, House of Representatives debate on March 10, 1999: "[I]t's kind of ludicrous, as you say, to think that the woman in labor is going to jump off the bed and run out of the hospital."  (Pls.' Stmt. Facts ¶ 35.)  Moreover, the Class Plaintiffs' injuries associated with their shackling are the type of injuries the Illinois statute is designed to prevent, including the strain on the unborn child and the mother.  (*Id.*, Ex. 1, 3/10/99 Illinois General Assembly debate, at 2-3.)  Based on the evidence in the record, a reasonable juror could infer that the Sheriff's alleged violation of the statute proximately caused the Class Plaintiffs' injuries.  *See Rivera v. Garcia,* 401 Ill.App.3d 602, 613, 340 Ill.Dec. 224, 927 N.E.2d 1235 (1st

17

Dist. 2010) ("The injury must be the natural and probable result of the negligent act or omission") (citation omitted).

Because the Sheriff's Office is a local public entity, however, there is an extra layer of analysis required under the Illinois Local Government and Governmental Employees Tort Immunity Act. *See* 745 ILCS 10/1-101, *et seq.* Specifically, in "order to protect public funds from being dissipated by damage awards in tort cases, the Local Government and Governmental Employees Tort Immunity Act was enacted to shield local public entities and public employees from liability for ordinary negligence committed during the exercise of their duties." *Mitchell v. Special Educ. Joint Agreement Sch. Dist. No. 208,* 386 Ill.App.3d 106, 111, 325 Ill.Dec. 104, 897 N.E.2d 352 (1st Dist. 2008) (internal citation omitted). Section 2-202 of the Tort Immunity Act states that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *See* 745 ILCS 10/2-202. The Tort Immunity Act defines willful and wanton conduct as:

> [A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a "willful and wanton" exception is incorporated into any immunity under this Act.

745 ILCS 10/1–210; *see also Tagliere v. Western Springs Park Dist.,* 408 Ill.App.3d 235, 241-42, 348 Ill.Dec. 643, 944 N.E.2d 884 (1st Dist. 2011).

As discussed above, certain policymakers at the Sheriff's Office, namely, the Superintendent of External Operations, the Executive Director of the Women's Justice Services, and the Superintendent of Administration, acknowledged that pregnant detainees from both the MOMs program and the CCJ Complex were shackled at some point during labor, delivery,

18

and/or recovery following delivery.  Although these individuals were aware of the shackling of pregnant detainees in labor, there is no evidence in the record that they took any action to change the practice or to comply with the Illinois statute that became effective on January 1, 2000. Based on this evidence, a reasonable juror could infer that these policymakers consciously disregarded the pregnant detainees' and their infants' health when delivering.  (*See* Pls.' Stmt. Facts ¶¶ 32, 33.)  Therefore, there are genuine disputes of material fact in regard to the Class Plaintiffs' negligence claim based on the Illinois statute forbidding the shackling of pregnant prisoners in labor.  The Court thus denies the parties' cross-motions for summary judgment as to the Class Plaintiffs' state law negligence claim.

## III.    Individual Capacity Claim

Last, the Individual Plaintiffs assert that Sheriff Dart, in his individual capacity, had actual knowledge of the practice of shackling pregnant detainees during labor, delivery, and/or recovery following delivery and that Sheriff Dart took more than one year in taking remedial action after he learned of the shackling policy.

In his summary judgment motion, Sheriff Dart contends that the Individual Plaintiffs have failed to present sufficient evidence establishing a genuine dispute as to his personal involvement in the practice of shackling pregnant detainees in labor.  "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'"  *Minix v. Canarecci,* 597 F.3d 824, 833–34 (7th Cir. 2010) (quoting *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003)); *see also Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009).  It is well settled that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in

19

a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996); *see also Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.") (citations omitted). Moreover, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). Instead, a government official satisfies the personal responsibility requirement if the conduct causing the alleged constitutional deprivation occurs at the official's direction or with his knowledge and consent. *See Arnett v. Webster,* 658 F.3d 742, 757 (7th Cir. 2011).

While there is undisputed evidence in the record that Sheriff Dart was aware of the 2006 and 2008 General Orders that stated: "NO handcuffs, leg irons or waist chains shall be used on a female inmate (detainee) who is in labor, this includes while being transported to a medical facility," the parties dispute whether Sheriff Dart knew of the unwritten practice of shackling pregnant detainees during labor, delivery, and/or recovery following delivery during the relevant time period. Specifically, Sheriff Dart asserts that he was unaware of the specific, day-to-day procedures the correctional officers used in restraining pregnant detainees – as supported by numerous Rule 30(b)(6) witnesses' deposition testimony. (Dart Stmt. Facts ¶¶ 48, 62, 63; R. 248, Dart Add'l Stmt. Fact ¶ 1.) On the other hand, citing to their Local Rule 56.1(b)(3)(C) Additional Statement of Facts, the Individual Plaintiffs maintain that because Sheriff Dart had personal involvement in many aspects of running the Cook County Jail, a reasonable juror could infer that Sheriff Dart had knowledge of how correctional officers restrained pregnant detainees in labor. The Individual Plaintiffs, however, did not file a Local Rule 56.1(b)(3)(C) Additional

20

Statement of Facts in which they supposedly presented evidence of comments made in a press

release, "internet admissions," and articles on www.huffingtonpost.com, among other

statements. *See United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.

2010) ("summary judgment may only be defeated by pointing to admissible evidence in the

summary judgment record that creates a genuine issue of material fact.").  In sum, the Individual

Plaintiffs do not "set forth specific facts showing that there is a genuine issue for trial," *see*

*Anderson*, 477 U.S. at 255, but only offer speculative arguments – not based on evidence – to

support their claim that Sheriff Dart had knowledge and was personally involved in the shackling

policy.  *See Truhlar v. United States Postal Serv.,* 600 F.3d 888, 893 (7th Cir. 2010)

("unsupported speculation is insufficient to overcome a motion for summary judgment.").  The

Court therefore grants Sheriff Dart's motion for summary judgment as to the individual capacity

claim.

## CONCLUSION

For the these reasons, the Court denies the parties' cross-motions for summary judgment

as to the Class Plaintiffs' official capacity claim and state law negligence claim.  The Court

grants Sheriff Dart's motion for summary judgment as to the individual capacity claim.  Because

the Court addressed Defendants' objections to Plaintiffs' Local Rule 56.1(b)(3)(B) Responses in

the context of each fact, the Court denies Defendants' motion to strike as moot.  The Court also

denies Plaintiffs' conditional motion to defer Defendant Dart's individual capacity claim

summary judgment motion as moot.

**Date:** December 20, 2011

ENTERED

AMY J. ST. EVE
**United States District Court Judge**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of September,   2013 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Seth Shippee, ASA, 50 West Washington St. Ste 500, Chicago, IL 60602 and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/  Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC 830399
200 S Michigan Ave, Ste 201
Chicago, Illinois 60604
(312) 427-3200
*an attorney for plaintiffs*