# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE FLORES, | ) |
| Plaintiff, | ) |
| | ) No. 10 C 8040 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| SHERIFF OF COOK COUNTY and | ) |
| COOK COUNTY, ILLINOIS | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Jose Flores brought this civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants Sheriff of Cook County (the "Sheriff") and Cook County, Illinois (the "County"), alleging that his constitutional rights as a pre-trial detainee were violated by the Sheriff's policy regarding the use of restraints on detainees while they are at off-site medical facilities.[1] Before the Court is Defendants' motion for summary judgment [68]. Because there is a genuine dispute as to whether the shackling policy is excessive as applied, the Court denies Defendants' motion on Flores' Fourteenth Amendment due process claim. However, the Court grants Defendants' motion as to Flores' deliberate indifference to medical needs and Fourth Amendment right to dignity claims.

---

[1] The County is sued as the statutory indemnitor of the Sheriff.

# BACKGROUND[2]

## I.     The Sheriff's Restraint Policy for Hospitalized Detainees

The Sheriff maintains a restraint policy with respect to hospitalized detainees "to ensure that the health care needs of hospitalized detainees are met in a humane manner." Def.'s Ex. D at 1. The policy, effective as of October 2008, classifies all detainees transported outside the Cook County Jail (the "Jail") as "high risk." Pursuant to the policy, detainees are never to be left unattended. They are not allowed to leave their hospital bed unless authorized to do so and are to be restrained in a manner that is not to interfere with medical procedures or tests. Specifically, one hand is to be handcuffed to the bed frame, with a reasonable amount of slack provided by the chain so as to allow for arm movement. The opposite ankle is also shackled. Any time a detainee is "ambulated, transported or tested," he is to be accompanied by two officers and is still restrained by handcuffs, leg shackles, or some other restraining device. *Id.* at 2. Although detainees are generally to be given bed pans to relieve themselves, the policy also provides that when medically permitted, they will be allowed to use hospital restrooms under guard escort and monitor. Leg shackles may be removed when necessary for medical treatment or therapy.[3]

Superintendent Joseph Brown was previously in charge of the Cook County Department of Corrections ("CCDOC") External Operations Division ("ExOps") and was responsible for the transportation of detainees outside the Jail and the provision of security to outlying hospitals, including John H. Stroger, Jr. Hospital ("Stroger Hospital"). According to Superintendent

---

[2] The facts set forth in this section are derived from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to Flores, the non-movant. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

[3] A prior version of the policy provided that hospitalized detainees would not be shackled when court order prohibited their use and when a licensed physician prohibited restraint for a valid medical reason.

Brown, in 2009, over 3,500 Jail detainees were scheduled to be transported by ExOps to receive medical treatment at outside hospitals and medical clinics. Less than 30 ExOps officers, however, were assigned to provide security at the three County hospitals and approximately 30 medical clinics where these detainees received treatment.

Over the past fifteen years, there have been more than fifteen escapes or escape attempts by Jail detainees while they were being transported to or from or treated at outside medical facilities. For example, one escape attempt occurred after a detainee was allowed to go to the bathroom unrestrained by handcuffs or shackles. Other escape attempts have been made while detainees have been handcuffed to crutches, restrained in double-locked handcuffs, handcuffed and shackled to a hospital bed, and confined to a wheelchair with a cast on one leg.[4] Some of the detainees that have removed their restraints and attempted to escape have attacked correctional officers, medical staff, and civilians. The restraint policy for detainees at outside medical facilities is thus based on safety and security concerns as well as to account for the limited number of ExOps officers available to provide security at these outside medical facilities.

## II. Application of the Restraint Policy to Flores

In 1998 and 1999, Flores was arrested on two felony drug charges and released on bond. He failed to appear in court as required, and warrants were thereafter issued for his arrest on both charges. Flores remained at large until January 5, 2009, when he turned himself in to authorities and was processed into the Jail as a pre-trial detainee. At that time, the Jail classified Flores as a medium security prisoner. Soon after entering the Jail, on January 13, 2009, Flores was taken to

---

[4] Although Brown states in his affidavit that the examples he provides of escape attempts are supported by attached police reports, it appears that through inadvertence only certain pages of the police reports were attached to the affidavit. The Court nonetheless considers the specific examples provided by Brown in the affidavit, as he attests that he has personal knowledge of the facts and it is reasonable to conclude that he would have been aware of these escape attempts as Superintendent of ExOps.

Stroger Hospital,[5] where he remained until January 17, 2009. Flores was treated for renal failure, lupus, and hypertension. Although Flores testified that his feet were "huge" and "swollen" and that he "couldn't hardly even walk," Def.'s Ex. C 15:21, 24:22–23, his medical records upon admission indicate that he had no leg swelling. Notes from Flores' chart on January 15, 2009 under the "history and physical" section state "DVT [deep vein thrombosis] with ambulating." Pl.'s Ex. 6. In a subsequent "progress note input," it was recorded that, with respect to "DVT prophylaxis," Flores "has been chained to the bed for days and has not been able to ambulate." Pl.'s Ex. 7. Another "progress note input" stated that Flores was "still in distress" and "upset due to cough as well as being handcuffed to bed." Pl.'s Ex. 8. Flores testified that doctors instructed him to walk around but that the correctional officers guarding him did not allow it.

While at Stroger Hospital, Flores was guarded at all times by a CCDOC officer who remained in his hospital room. Flores was also restrained to his hospital bed, with one leg shackled to one side of the bed and the opposite arm shackled to the other side of the bed. Although the shackles prevented him from leaving the bed, he was still able to sit up on the bed and feed himself with his free hand. When he had to urinate or defecate, he was not allowed to leave the bed to go to the bathroom but was instead given a urine-collection device and a bed pan. The restraints were removed for medical procedures as requested by doctors and nurses, which occurred at least two times during Flores' stay at Stroger Hospital. Flores complained only once about his shackles to an unknown female doctor. Although he experienced pain in his ankles from the shackles being tight, Flores agrees that the swelling in his ankles was due to his kidney issues and was not caused by the ankle restraints. Flores does not recall any doctor

---

[5] Stroger Hospital is a 1.2 million square foot, 464 bed hospital. It has a staff of 300 attending physicians and over 400 medical residents and fellows. Its emergency room treats approximately 110,000 patients annually.

4

ordering that his shackles be removed for a medical reason. He did not require medical treatment for any injury caused by being shackled.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

I. **Admissibility of Superintendent Brown's Affidavit**

Before turning to the merits of the case, the Court must address the parties' dispute over the admissibility of Superintendent Brown's affidavit, which Defendants have submitted in conjunction with their motion for summary judgment. Flores argues that the Court should disregard the affidavit and the accompanying exhibits, as Brown was not disclosed as a witness

5

in Defendants' Rule 26 disclosures and Flores thus has not had an opportunity to depose Brown about the matters set forth in his affidavit. Flores admits, however, that the information included in Brown's affidavit and the exhibits attached thereto were produced by defendants in *Zaborowski v. Dart*, No. 08 C 6946 (N.D. Ill.), a case in which his counsel was also attorney of record.

Defendants do not dispute that Brown was not disclosed as a witness in their Rule 26 disclosures. They nonetheless argue that the affidavit and exhibits are properly before the Court, as the affidavit was invited by Flores' response to their initial motion for summary judgment where Flores challenged Defendants' failure to present factual evidence regarding escapes by hospital detainees. Further, according to Defendants, Flores cannot claim surprise, as his current counsel was involved in the *Zaborowski* case, in which the same materials were used and for which Brown provided an affidavit. Moreover, Defendants claim Flores cannot argue he has been prejudiced, for he never sought to depose a Rule 30(b)(6) witness, which is essentially the role Brown is playing by providing institutional knowledge on the Sheriff's restraint policy.

Under Rule 37(e), a party that has failed to identify a witness as required by Rule 26(a) or (e) may not use that witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The determination of whether a Rule 26(a) violation is justified or harmless is left to the trial court's discretion. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). In determining whether exclusion is warranted, the Court considers: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*

Having considered these factors, the Court declines to strike Brown's affidavit and the attached exhibits. Defendants' failure to produce the information related to escape attempts and the need for the restraint policy until filing their revised motion for summary judgment cannot be justified. Defendants cannot plausibly claim that they were not aware that they would have to defend the policy as rationally related to a non-punitive purpose. But because the Court denies Defendants' motion for summary judgment on Flores' Fourteenth Amendment due process claim as set forth below, the Court concludes that the late disclosure is harmless. Flores cannot claim surprise, as he himself pointed out in his response to Defendants' initial motion for summary judgment that Defendants had not attempted to defend the policy based on the very evidence they now seek to use. Flores thus should have been prepared to respond to it. But instead of seeking exclusion and at the same time substantively responding to the evidence, Flores has chosen only to pursue the former course at his own peril. One exhibit to the affidavit, the Sheriff's restraint policy, has been the subject of the lawsuit from the beginning of the case and was used by Flores in depositions and is thus not problematic. Counsel for Flores admits that he

had access to the documents included in the other exhibit. Any prejudice can be cured by allowing Flores to depose Brown, and thus the Court will reopen discovery for that limited purpose.

## II.     Fourteenth Amendment Due Process Claim

Flores' claims are against the Sheriff in his official capacity only and thus must be viewed under the framework set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *See Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself."). The Sheriff may be held liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Flores pursues his claims only through the first avenue of liability, an express policy, and thus the Court need not consider whether liability can be established by the latter two means.

Flores alleges that his due process rights were violated by the Sheriff's restraint policy. "The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee." *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000). Although pretrial detainees have "an interest in being free from gratuitously severe restraints and hazards, . . . the detention facility has an interest in protecting the safety of inmates

8

and guards and preventing escapes." *Hart v. Sheahan*, 396 F.3d 887, 893 (7th Cir. 2005). Thus, the use of physical restraints violates the Fourteenth Amendment if "their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *May*, 226 F.3d at 884.

The Sheriff argues that the restraint policy is rationally related to the legitimate, non-punitive purpose of maintaining security while detainees are at hospitals outside the Jail. The stated purpose of the policy is to ensure constant visual surveillance of detainees so as to "provid[e] safety for the hospital personnel, citizens of Cook County and the detainee." Def.'s Ex. D at 1. There is undisputed evidence in the record that detainees have attempted to escape while at an outside medical facility or being transported to or from such a facility, even while restrained, and that some of these escape attempts have involved violence. This evidence supports the need for a restraint policy and suggests that such a policy is intended to ensure the safety of those encountering the detainees. Importantly, this need to "maintain[ ] institutional security" has been recognized by the Supreme Court as a goal warranting the "limitation or retraction of the constitutional rights" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *see also May*, 226 F.3d at 884 ("[S]hackling all hospital detainees reduces the risk of a breach of security and thus furthers a legitimate non-punitive government purpose."); *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997) (finding restraint policy constitutional, as it is "eminently reasonable to prevent escape attempts at the outset by restraining hospitalized inmates to their beds"). Flores has not presented any evidence to create a dispute on this issue, nor does the Court find that he could do so, based on Supreme Court and Seventh Circuit precedent. Thus, the Court finds that the restraint policy is rationally related to a non-punitive purpose.

Prison administrators are to be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. Nonetheless, to comply with due process requirements, the restraint policy may not be excessive in achieving its non-punitive purpose. *May*, 226 F.3d at 884. In *May*, although decided at the motion to dismiss stage, the court concluded that "shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard" was "plainly excessive in the absence of any indication that the detainee poses some sort of security risk." 226 F.3d at 884. Similarly, in *Zaborowski*, the court denied summary judgment where, among other issues, the Sheriff's Office admitted that pregnant detainees in a residential program outside of the Jail were unlikely to be a flight risk and were guarded at all times by correctional officers at outside medical facilities. *Zaborowski v. Dart*, No. 08 C 6946, 2011 WL 6660999, at *7 (N.D. Ill. Dec. 20, 2011).

Here, there is at least a question of whether the restraint policy is excessive as applied. The restraint policy designates all hospital detainees as high risk, regardless of the classification they have been given at the Jail. Superintendent Brown suggests that this blanket designation is necessary, as escape attempts have occurred even when detainees have not appeared to be flight risks. But Flores argues that it is not appropriate in cases such as his, where he was classified by the Jail as a medium security prisoner and had difficulty walking when he was admitted to Stroger Hospital. Further, as in both *May* and *Zaborowski*, the policy provides that the detainee is constantly guarded by a correctional officer, thus suggesting that the restraint policy may be excessive. Because there is a genuine dispute as to whether the restraint policy is excessive, the Court denies Defendants' motion for summary judgment on Flores's due process claim.

## II. Deliberate Indifference Claim

Although Flores' deliberate indifference claim is brought under the Fourteenth Amendment because he was a pretrial detainee, he is entitled to the same protection against deliberate indifference that the Eighth Amendment affords convicted prisoners. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). To prevail on this claim, Flores must demonstrate that he had an objectively serious medical need and that the Sheriff knew of and disregarded the substantial risk of harm. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Because Flores is proceeding against the Sheriff in his official capacity, challenging the restraint policy itself, he must show that the restraint policy created "a risk of serious harm [that] was so patently obvious that the municipality must have been aware of [a] risk of harm and, by failing to act to rectify it, sanctioned the harmful conduct." *Smith v. Sangamon County Sheriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013) (alterations in original) (quoting *Estate of Novack*, 226 F.3d at 530).

Flores argues that the Sheriff was deliberately indifferent to his medical needs because physicians at Stroger Hospital ordered that he be allowed to ambulate but he was not allowed to do so. The Sheriff disputes whether there was ever an order given requiring that Flores be allowed to ambulate, but that dispute is immaterial. If such an order had been given and not followed, Flores may have a deliberate indifference claim against the correctional officers who did not follow the order. But § 1983 does not allow for claims based on *respondeat superior*, *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012), and Flores has only brought a claim against the Sheriff in his official capacity. The restraint policy allows for leg irons to be removed when required for medical treatment and therapy, so that the shackling does not

11

interfere with a detainee's medical treatment.[6] Therefore, the policy anticipated the need for restraints to be removed for treatment purposes. Thus, even assuming that Flores was ordered to ambulate but was not allowed to do so, the Sheriff cannot be held liable and summary judgment is granted for Defendants on Flores' deliberate indifference claim.

### III. Fourth Amendment Right to Dignity Claim

Flores appears to assert a claim that he has a right to dignity protected by the Fourth Amendment that was violated by the Sheriff's shackling policy. The Court is unclear as to the contours of this claim, and Flores acknowledges that he did not plead this legal theory in his complaint. Nonetheless, in his response, he contends that the Fourth Amendment was violated because he was required to use a bed pan when he was capable of walking to the bathroom and because he remained shackled in bed despite being told by a physician that walking was important to treat his deep vein thrombosis.

Flores cites no case law to support a finding that the shackling in this case constitutes an actionable seizure. Moreover, the Court has already determined that the Sheriff cannot be held liable for being deliberately indifferent to Flores' need for ambulation under an Eighth Amendment analysis. Flores does not provide any argument as to why the analysis would be different under the Fourth Amendment and in fact cites to Eighth Amendment cases in support of his claim. Although the Court is not convinced that Flores has any claim under the Fourth Amendment with respect to the application of the restraints, even if he did, based on the deliberate indifference analysis above, the Sheriff cannot be held liable for a Fourth Amendment violation.

---

[6] Flores points out that the 2006 policy contained a more explicit exception but cannot deny that the policy in effect when Flores was at Stroger Hospital provided that leg irons would be "removed from the bed frame . . . for medical treatment/therapy." Def.'s Ex. D at 8.

Similarly, Flores has not cited, nor has the Court been able to locate, any case law to support the fact that the use of a bed pan and urine collection device in place of a bathroom qualifies as a constitutional violation that would be actionable under the Fourth Amendment. Nor does the Court believe that the Fourth Amendment is intended to cover such instances, even taking into account the fact that prisoners and pretrial detainees retain certain constitutional protections during their confinement. *See Bell*, 441 U.S. at 545. Even assuming that the use of a bed pan and urine-collection device is a restriction that violates a protected right under the Constitution, the record does not support a finding that their use was unreasonable in this instance. The restraint policy allows detainees to use hospital restroom facilities when medically permitted. There is no evidence in the record that Flores' doctors determined that his restroom use was medically permitted or even that Flores discussed such use with his doctors. Nor has Flores provided evidence to dispute whether the restriction was a reasonable one. Thus, the Court grants Defendants' motion for summary judgment on Flores' Fourth Amendment claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [68] is granted in part and denied in part. Summary judgment is granted for Defendants on Flores' deliberate indifference and right to dignity claims. The Court denies summary judgment on Flores' due process claim. Discovery is reopened for the limited purpose of taking Superintendent Joseph Brown's deposition.

Dated: March 18, 2014

SARA L. ELLIS
United States District Judge